IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL BECKWITT,                    *

Petitioner,                        *

v.                                 *          Civil Action No. PX-22-659

SUSAN MALAGARI,                    *

Respondent.                        *

***

<u>**MEMORANDUM OPINION**</u>

Daniel Beckwitt brings this federal habeas corpus Petition pursuant to 28 U.S.C. § 2254, challenging his 2019 state court conviction for involuntary manslaughter. ECF Nos. 1 & 17-2. The Petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

**I.     Background**

   **A.     Trial[1]**

On May 31, 2018, Beckwitt was indicted in Montgomery County Circuit Court for second degree murder and involuntary manslaughter. ECF No. 17-8. His case proceeded to a jury trial in which the State demonstrated that Beckwitt's grossly negligent acts caused a fire in his basement that killed his worker, Askia Khafra. As demonstrated at trial, Beckwitt first met Khafra in connection with Khafra's company. From there, the two became good friends as well as business partners. Beckwitt specifically invested $10,000 in the company. But when the new business plan

---

[1] The trial facts are summarized from the Supreme Court of Maryland's decision in *Beckwitt v. State*, 477 Md. 398, 410-415 (2022).

did not come to fruition, Khafra agreed to repay the loan through his in-kind labor by digging tunnels and an underground bunker beneath Beckwitt's home.

Khafra worked under strange circumstances. Beckwitt would pick up Khafra around 3:00 a.m., blindfold him during the trip, and then Khafra would work under Beckwitt's home anywhere from a few days to a few weeks at a time. For those days, Khafra remained underground at the worksite; Beckwitt would not allow Khafra into the main areas of the home. Khafra would clean himself with disposable wipes and relieve himself in a bucket. Beckwitt would remove the bucket every few days, dispose of its contents and return it to Khafra. Beckwitt did not have a phone, so Khafra communicated with Beckwitt using Google Voice and V Chat. As for electricity, Beckwitt ran extension cords and power strips into the underground worksite. Beckwitt often had to reset the circuit breakers in the home when Khafra was using the makeshift power sources.

On September 10, 2017, at 2:32 a.m., Khafra messaged Beckwitt that the power had gone out, that smoke was filling the basement, and that it was "pitch black" with no airflow. Khafra asked Beckwitt to "please try to fix when you see this."

Beckwitt did not see the messages until he woke around 9 a.m. About a half hour later, Beckwitt messaged Khafra that a "pretty major electrical failure'" occurred, so Beckwitt had to switch the power to a different circuit. Beckwitt then went back to sleep. When he woke several hours later, Beckwitt realized the power was still out, so he went to the basement to reset the circuit breaker. As Beckwitt headed back to the first floor, he heard an explosion and then saw smoke rising through the kitchen floor.

Beckwitt returned to the basement to tell Khafra he needed to get out. He heard Khafra yell "yo dude!" but could not see him through the smoke. Beckwitt then unlocked the exterior basement door and began to yell for help. The neighbors called 9-1-1.

Firefighters responded to the scene.  They had trouble navigating through the home because Beckwitt was a hoarder and had packed the house with his belongings, trash, and debris. Ultimately, the firefighters extinguished the fire, after which they found Khafra dead in the middle of the basement.

After a nine-day trial, the jury convicted Beckwitt of involuntary manslaughter and second-degree murder.  ECF Nos. 26-6, 26-7, 26-8, 26-9, 26-10, 26-11, 26-12, 26-13, & 26-14.  Thereafter, the Circuit Court sentenced Beckwitt to 21 years' imprisonment, all but nine years suspended, and five years' probation.  ECF No. 26-16 at 81-88.

### B.    Direct Appeal

Beckwitt appealed his conviction to the Appellate Court of Maryland, in which he argued: (1) the evidence had been insufficient to support a conviction on either count; (2) the Court erroneously instructed the jury on the elements of both offenses; (3) the prosecutor's repeated improper remarks during closing and rebuttal warranted a new trial; and (4) the trial court erred in denying Beckwitt a *Franks* hearing.  ECF No. 17-10 25.  As to the first contention, sufficiency of the evidence, the Appellate Court concluded that evidence supported the involuntary manslaughter conviction but was insufficient to sustain second degree "depraved heart" murder.  *Beckwitt,* 249 Md. App. 333; ECF No. 17-4.  Accordingly, the Appellate Court vacated the second-degree murder conviction and remanded for resentencing on involuntary manslaughter.  *Beckwitt*, 249 Md. App. at 401; ECF No. 17-4 at 64.

### C.    Cross Petitions to the Supreme Court of Maryland

Beckwitt and the State next filed cross-petitions for certiorari to the Supreme Court of Maryland.  ECF Nos. 17-14 & 17-15.  The State argued that the Appellate Court erred in vacating the second degree murder count while Beckwitt raised four issues aimed at the involuntary

manslaughter conviction.  Beckwitt specifically pressed the sufficiency of the evidence argument. He also contended that state court lacked jurisdiction to hear the case, and that the trial court erred in instructing the jury on the elements of involuntary manslaughter.  ECF No. 17-14.  On January 28, 2022, the Supreme Court of Maryland affirmed the Appellate Court's decision.  *Beckwitt*, 477 Md. at 398, *reh'g denied*, 143 S. Ct. (2022); ECF No. 17-3.

Beckwitt, now proceeding pro se, moved for reconsideration, arguing; (1) the state fire code preempted the common law reasonable care standard, violating his due process rights, and (2) the court erroneously held that legal duty was not an element of grossly negligent involuntary manslaughter.  ECF No. 17-18.  The Supreme Court of Maryland denied the motion and issued its mandate on March 25, 2022.  ECF Nos. 17-6, 17-7.

On March 29, 2022, the trial court resentenced Beckwitt on the involuntary manslaughter conviction to a term of ten years' imprisonment with all but five years suspended and five years' probation.  ECF No. 26-1 at 6-7.

### D.    Federal Habeas Petition

On March 17, 2022, Beckwitt filed the pending Petition in this Court.  ECF No. 1 & amended at ECF No. 17-2.  Beckwitt asserts the following claims for relief.  For clarity, the Court recites the claims verbatim:

**Ground 1:** In contravention to the right to fair warning under the Due Process Clause of the Fifth Amendment to the United States Constitution made applicable to the states under the Fourteenth Amendment thereto as recognized by the Supreme Court of the United States in *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964), the Maryland judiciary did illegally:

(a) Retroactively abrogate the element of legal duty from the *corpus delici* of the common law crime of grossly negligent involuntary manslaughter to expand its field of proscribed conduct beyond common law subject matter jurisdiction.

(b) Exceed its jurisdiction to retroactively impose upon Petitioner a duty to install smoke detectors by overruling a field preemption defense recognized in *Salvatore v. Cunningham,* 305 Md. 421 (1986).

(c) Exceed its jurisdiction to retroactively impose upon Petitioner a duty to exercise reasonable care for fire safety conduct by overruling a field preemption defense applying to conduct covered by the Maryland State Fire Prevention Code.

(d) Retroactively eliminate a jurisdictional express field preemption defense immunizing Petitioner from common law prosecution for accidental dwelling house fires under English statutes.

(e) Retroactively apply the reduced evidentiary sufficiency standard first announced in *State v. Thomas*, 464 Md. 133, 159 (2019), to sustain Petitioner's conviction with *ex ante* insufficient evidence (of conduct not prohibited on a statewide basis) under the controlling holding of *State v. Pagotto*, [361 Md. 528, 551 (2000)].

(f) Refuse to apply the common law requirement for expert testimony on the standard of care for wielding of scientific and technical instrumentalities to evidence of Petitioner's interaction with electrical instrumentalities, as recognized by *Crickenberger v. Hyundai Motor Corp.*, 404 Md. 37, 53 (2008), in order to sustain Petitioner's conviction with *ex ante* insufficient evidence.

(g) Refuse to apply the common law proscription against using prior defect evidence as direct proof of negligence to evidence Petitioner's interaction with electrical instrumentalities, as recognized in *Blanco v. J.C. Penney Co.*, 251 Md. 707, 712-713 (1967), in order to sustain Petitioner's conviction with *ex ante* insufficient evidence.

**Ground 2:** In contravention to the right to freedom from a wholly arbitrary deprivation of liberty under the Due Process Clause of the Fifth Amendment to the United States Constitution made applicable to the states under the Fourteenth Amendment thereto as recognized by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Maryland state judiciary did illegally:

(a) Sustain Petitioner's conviction with ex ante insufficient evidence.

ECF No. 17-2 at 31-33.

Respondent now moves to dismiss the Petition, arguing that the claims are procedurally defaulted or fail on the merits. ECF No. 26. Beckwitt, for his part, maintains that Respondent confined its procedural default argument solely to Ground (1)(c). ECF No. 28. He also argues that the *Bouie* related claims in Ground 1 are exhausted because he raised a sufficiency of the evidence argument at every stage of the proceedings. ECF No. 17-2 at 38. Last, Beckwitt argues

that any procedural default must be excused because exhaustion is futile, the state courts retroactively altered the substantive law, and he is actually innocent. *Id.* at 39-40.

The Court first addresses whether the claims are procedurally defaulted.

## II.    Procedural Default

Respondent contends that most claims must be dismissed because Beckwitt failed to raise them fully in state court.  ECF No. 26 at 2, 4, 66-75, 99.  A procedural default occurs when the petitioner fails to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735, (1991), *as modified by Martinez v. Ryan*, 566 U.S. 1, n.1, (2012)).

In Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings.  To exhaust a claim on direct appeal in a non-capital case, a defendant must first present the claim on appeal to the Appellate Court of Maryland and if unsuccessful, must petition the Supreme Court of Maryland for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301.  To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the defendant was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101–7-103.  If unsuccessful, the defendant must file an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109.  If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted.  Md. Code Ann., Cts. & Jud. Proc. § 12-202. Maryland law does not permit a second or successive state petition for post-conviction relief. *See* Md. Code Ann., Crim. Proc. § 7-103(a).

A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman*, 501 U.S. at 731–32).

Respondent broadly contends that the entirety of Beckwitt's *Bouie* claims are procedurally defaulted, yet only addresses why procedural default applies to Ground (1)(c). ECF No. 26 at 23, 66-69. The Court cannot agree with Respondent. This is because "any challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." *Pope v. Netherland*, 113 F.3d 1364, 1368 (4th Cir. 1997). And more to the point, where, as here, the Petitioner argues that the trial court's novel interpretation of the applicable law violated his due process rights pursuant to *Bouie,* he has necessarily preserved his due process claim. *Id.* Because Beckwitt argued insufficiency of evidence on the manslaughter offense before both the Appellate and Supreme Courts of Maryland (ECF No. 17-10 at 25 & ECF No. 17-4 at 18), Ground (1)(c) is not procedurally defaulted. Nor are any of the other *Bouie* related claims articulated in Ground One. Thus, the Court turns next to the merits of the claims.

### III.     Merits of Grounds One and Two

### A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") narrowly circumscribes the scope of this Court's review. The Court may grant the writ only if the underlying state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or involved an "unreasonable application of such law," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) & (2). *See also Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). The Court reviews the "the last reasoned decision of a state court addressing the claim." *Allen v. Stephan*, 42 F.4th 223, 247 (4th Cir. 2022), *cert. denied sub nom., Chestnut v. Allen*, 143 S. Ct. 2517 (2023) (quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 364–365. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 407. In other words, to obtain relief, the petitioner must identify the "clearly established" legal principle on which he relies. To qualify as "clearly established," a principle must originate from an actual Supreme Court holding, not from its passing dicta. *See White v. Woodall*, 572 U.S. 415, 419 (2014). The petitioner also must describe this holding with specificity. *See Brown v. Davenport*, 596 U.S. 118 (2022). He cannot recite a holding

at a "high level of generality." *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam) (citation omitted). *See also Metrish v. Lancaster,* 569 U.S. 351, 367–68 (2013). Circuit precedent cannot turn "a general principle of Supreme Court jurisprudence into a specific legal rule" that has not been stated by the Supreme Court. *Lopez*, 574 U.S. at 7 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

If relying on the "unreasonable application" clause, the petitioner must show that the state court engaged in an "unreasonable application" of clearly established law. *Williams (Terry) v. Taylor*, 529 U.S. 362, 364-365 (2000). Under this test, a federal court's belief that a state court erred when applying a legal principle alone does not suffice. Rather, the Court must find that the state court's application as "objectively unreasonable," *White*, 572 U.S. at 419, quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003), that is, when the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Beckwitt faces an additional hurdle if he alleges a trial court error that the state court subjected to harmless error review. Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the deferential review required by AEDPA. *Brown*, 596 U.S. 118. *Brecht* requires a state prisoner who collaterally attacks his conviction to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "substantial or injurious effect or influence" means "actual prejudice." *See Brecht,* 507 U.S. at 637–38. A "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Brown,* 596 U.S. at 134 (emphasis in original). To succeed on any of his

trial error claims, the petitioner must convince this federal habeas court that there is grave doubt about his verdict *and* demonstrate that every fairminded jurist would agree that the error was prejudicial. *Id.* at 136.

As discussed in detail below, these standards foreclose Beckwitt's claims.

## B.    Analysis

As a preliminary matter, Beckwitt contends that the state court lacked subject matter jurisdiction over him.  ECF No. 32 at 143-193.  The Supreme Court of Maryland rejected this contention, finding "[t]he Circuit Court for Montgomery County—the circuit court in this case—plainly had subject matter jurisdiction over Beckwitt's criminal case because it had the power to render a judgment with respect to the felony offenses with which Beckwitt was charged." *Beckwitt*, 477 Md. at 422; ECF No. 17-3 at 17.  A "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (citing Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976)).  Accordingly, the argument plainly fails before this Court.

### 1.    Ground One Claims

Turning to Beckwitt's claims articulated in Ground One, he essentially contends that his involuntary manslaughter conviction violates due process because the trial court retroactively altered the elements of the offense such that he had no fair warning of the charges, as articulated in *Bouie v. City of Columbia*, 378 U.S. 347 (1964).  ECF No. 17-2 at 43-46, 66-124.  In *Bouie*, the Court held that "…a criminal statute must give fair warning of the conduct that it makes a crime," and so if "a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect." *Id.* at 354 (quoting J. Hall, General Principles of Criminal Law 61 (2d

ed.1960)).  Specifically, says Beckwitt, the Maryland Supreme Court's affirmance violated *Bowie*

in three ways: first, by directly altering an element of the offense (Ground 1(a) and (e)); second,

by failing to credit his preemption defenses (Ground 1(b), (c) and (d)); and third, by using the

wrong evidentiary standard in assessing the sufficiency of the evidence (Ground 1(f) and (g)).  The

Court addresses each separately.

### a.    Altering the Elements of the Offense - Ground 1(a) and (e)

For Ground 1(a), Beckwitt argues that the Maryland Supreme Court "abrogate[d] legal

duty from the offense elements of grossly negligent manslaughter," and "invented a nonsensical

legal concept: duty-free negligence."  ECF No. 17-2 at 50, 54.  As the Maryland Supreme Court

explained, the law recognizes three ways to commit involuntary manslaughter: "(1) unlawful act

manslaughter—doing some unlawful act endangering life but which does not amount to a felony;

(2) gross negligence manslaughter—negligently doing some act lawful in itself; and (3) the

negligent omission to perform a legal duty."  *Beckwitt*, 477 Md. at 429–30 (quoting *State v.*

*Thomas*, 464 Md. 133, 152, 211 A.3d 274, 285 (2019)(cleaned up)).  The Court further explained

that for gross negligence and negligent omission manslaughter, "the negligence must be criminally

culpable[,] i.e., grossly negligent." *Id.* (quoting *Thomas*, 464 Md. at 152,  211 A.3d at 285 (cleaned

up)).

The State pursued the involuntary manslaughter charge against Beckwitt on two distinct

theories: "gross negligence" and "legal duty involuntary manslaughter."  ECF No. 26-13 at 39-40.

As to the first theory, the Circuit Court instructed the jury that to convict, the State must prove that

Beckwitt acted in a "grossly negligent manner," which caused Khafra's death.  *Id.*  The court

further instructed that "grossly negligent" means "that defendant, while aware of the risk, acted in

a manner that created a high risk to and showed a reckless disregard for human life." *Id.* at 40.

On the second theory, the court instructed that if the jury found an employer-employee relationship

existed between Beckwitt and Khafra, then Beckwitt had the duty to provide reasonable safe working conditions. So to convict on this theory, the State must prove that (1) Beckwitt employed Khafra; (2) defendant failed to perform his legal duty; (3) that the defendant's failure to perform the legal duty caused the death of the victim, and (4) and that by failing to perform this legal duty defendant acted in a grossly negligent manner. *Id.* The trial court defined "grossly negligent" manner as acting "in a manner that created a high risk to and showed a reckless disregard for human life," with an awareness of that risk. *Id.*

Ultimately, the Supreme Court of Maryland affirmed on both theories.[2] *Beckwitt*, 477 Md. at 440–48. ECF No. 17-3 at 37-46. The Court articulated that gross negligence manslaughter requires proof that "the defendant's conduct resulted in the victim's death… and [t]he act must manifest such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to the consequences." *Beckwitt*, 477 Md. at 432 (citing *State v. Albrecht*, 336 Md. 475, 500 (1994) & *Thomas*, 464 Md. at 153); ECF No. 17-3 at 28. Applying this standard, the Court concluded that a reasonable jury could find "that Beckwitt violated his common law duty to provide a reasonably safe workplace with reckless indifference as to whether his actions or inactions endangered Khafra and that Beckwitt's failure to fulfill his duty constituted gross negligence." *Beckwitt*, 477 Md. at 451; ECF No. 17-3 at 50.

As to legal duty involuntary manslaughter, the Supreme Court of Maryland articulated the elements as: "(1) the victim's death was caused by the defendant's failure to perform a duty that the defendant had a legal obligation to perform, and (2) the defendant acted in a grossly negligent manner because the defendant (a) was aware of his or her obligation to perform that duty, and (b)

---

[2]    The Appellate Court of Maryland only reached whether the conviction survived challenge under the gross negligence theory. *Beckwitt*, 249 Md. App. at 379; ECF No. 17-4 at 38.

was aware that his or her failure to perform that duty would create a high degree of risk to human life." *Beckwitt*, 477 Md. at 438–39; ECF No. 17-3 at 35-36.  The Maryland Supreme Court further reaffirmed the principle that "an employer owes an employee the duty to provide a reasonably safe place to work."  *Id.* at 438 (citing *Athas v. Hill*, 300 Md. 133, 139 (1984)); ECF No. 17-3 at 35. Again as applied to Beckwitt, the Court determined that "any rational juror could have concluded beyond a reasonable doubt, based on evidence of the dangerous conditions that Beckwitt created in the basement and his disregard for Khafra's safety on the day of the fire, that his conduct amounted to a wanton and reckless disregard for human life—a gross departure from the conduct of an ordinarily prudent person, without regard to the consequences or the rights of others, and [was] likely to bring harm at any moment." *Beckwitt*, 477 Md. at 446; ECF No. 17-3 at 44.

Beckwitt now argues, with little explanation, that the Supreme Court of Maryland wrote the duty element "out of existence" in affirming his conviction.  ECF No. 17-2 at 58.  But a "judicial alteration" of the elements "violates the principle of fair warning," only when the articulation of the elements is "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) (quoting *Bouie*, 378 U.S. at 354).  Contrary to Beckwitt's argument, the Supreme Court never eliminated the "duty" element of the offense – it rather reaffirmed its existence. *Beckwitt*, 477 Md. at 451; ECF No. 17-3 at 50.  Nor can the court's interpretation of the involuntary manslaughter elements under either theory be considered "unexpected and indefensible." *Bouie*, 378 U.S. at 350, or an "unreasonable" application of federal law.  28 U.S.C. §2254(d)(1).  *See generally Metrish*, 569 U.S. at 367.[3]  Thus, the claim articulated in Ground 1(a) fails.

---

[3]      While unclear, it appears that Beckwitt may be attempting to raise an additional claim for double jeopardy in his reply.  ECF No. 32.  This claim is not properly before the Court.  *See* Rule 2(c), Rules Governing Section 2254 Proceedings (requiring each habeas petition to "specify all the grounds for relief which are available to the petitioner").  And even if it were, double jeopardy protects a defendant against either "cumulative *punishments* for the 'same

Ground 1(e) also fails for similar reasons. Beckwitt argues that because the Maryland Supreme Court failed to apply a "reduced" sufficiency standard as announced in *State v. Pagotto*, 361 Md. 528, 551 (2000), and instead applied a new gross negligence standard articulated after his conviction in *State v. Thomas*, 464 Md. 133 (2019), it altered the elements of the offense without proper notice and in violation of *Bouie*. ECF No. 17-2 at 115-120. But Beckwitt confuses the court having reached an outcome different than what Beckwitt expected with somehow recasting the elements of involuntary manslaughter. The Maryland Supreme Court has consistently articulated the same elements for gross negligence involuntary manslaughter across the board. *Compare Pagotto*, 361 Md. at 548, *with Thomas*, 464 Md. at 153, *with Beckwitt*, 477 Md. at 432. In particular, the *Thomas* Court, relying on *Albrecht*, plainly stated that to be found guilty of gross negligence involuntary manslaughter, "the State must demonstrate wanton and reckless disregard for human life. This requires a gross departure from the conduct of an 'ordinarily careful and prudent person' and a disregard or indifference to the rights of others." *Thomas,* 464 Md. at 160–61 (quoting *Albrecht*, 336 Md. at 500). The *Beckwitt* Court, in turn, grounded its decision in the same fundamental articulation of gross negligence involuntary manslaughter. *Beckwitt*, 477 Md. at 432-33. Thus, the Court's reliance on this precedent was entirely consistent. It was neither "unexpected" or "indefensible," and certainly did not announce a new rule in violation of Beckwitt's due process rights.

Beckwitt also attempts to reframe his case as centered on the malum in se or malum prohibitum distinction applicable in certain involuntary manslaughter. To the extent the *Pagotto*

---

offense' in a single criminal trial; [or] against being subjected to successive *prosecutions* for the 'same offense,' without regard to the actual imposition of punishment." *United States v. Slocum*, 106 F.4th 308, 312 (4th Cir. 2024) (quoting *United States v. Ragins*, 840 F.2d 1184, 1187 (4th Cir. 1988)). As Beckwitt seems to acknowledge, neither situation applies here. ECF No. 32 at 82.

and *Thomas* Courts wrestled with the concepts of acts which are malum in se versus malum prohibitum, *Pagotto*, 361 Md. at 551; *Thomas*, 464 Md. at 163, the distinction has little application to Beckwitt's offense.  Whether conduct is inherently dangerous (malum in se) or instead violates a regulation (malum prohibitum) matters only to the third type of involuntary manslaughter – unlawful act manslaughter – for which Beckwitt was not convicted.  *Beckwitt*, 477 Md. 398. Indeed, as the *Thomas* Court explained, "[w]hen the State seeks to proceed under a gross negligence manslaughter theory, it must demonstrate the higher level of culpability, irrespective of whether the underlying offense is *malum in se* or *malum prohibitum*."  *Thomas*, 464 Md. at 163. *See also Schlossman v. State,* 105 Md. App. 277, 284–85, (1995), *overruled on different grounds by Bailey v. State*, 355 Md. 287 (1999) (finding that unlawful act involuntary manslaughter hinges upon whether the unlawful act was malum in se or malum prohibitum); *Johnson v. State*, 223 Md. App. 128, 138–39 (2015) (same).  In short, Beckwitt's due process claim fails, and Ground 1(e) is dismissed.

The Court next turns to Beckwitt's contention that the Maryland Supreme Court committed a *Bouie* violation in rejecting his preemption defenses.

### b.    Preemption Defenses - Ground 1(b), (c), and (d)

Before the Maryland Supreme Court, Beckwitt pressed that English statutes incorporated into Maryland's common law preempted the State's ability to prosecute him for failing to install a smoke detector or provide adequate egress from the basement.  ECF No. 17-4 at 38-65.  Although the Court held that Beckwitt had waived the argument for failing to raise it below, the court nonetheless reached – and rejected – the merits of the claim.  *Beckwitt*, 477 Md. at 423; ECF No. 17-3 at 18-19.  The Court reasoned that English statutes did not apply in Maryland.  The Court alternatively reasoned that neither would the statutes preempt the prosecution "because the charges

in this case were not based on Khafra having lost his life in an accidental fire but rather on Beckwitt's conduct in subjecting Khafra, in wanton and reckless disregard for his life, to the dangerous conditions that caused his death." *Beckwitt*, 477 Md. at 426, 428; ECF No. 17-3 at 18-19, 22, 24.  The Court also emphasized that the absence of a "common law duty" to install smoke detectors or provide sufficient egress does not mean the facts are irrelevant.  Rather, as the Court explained, "[t]he installation of a smoke detector or having a designated emergency exit are but two measures that Beckwitt could have taken to establish a reasonably safe workplace," and that evidence was sufficient to show "that Beckwitt failed in numerous ways to fulfill the duty to provide Khafra with a reasonably safe workplace, including by failing to provide reliable electricity for light and airflow in the workplace, by failing to provide a reliable method of communication, and by maintaining an excessive amount of debris and trash in the workplace." *Beckwitt*, 477 Md. at 447–48; ECF No. 17-3 at 46.

Now before this Court, Beckwitt spills much ink disagreeing with the Maryland Supreme Court, but with little analysis as to how his disagreement raises a claim of constitutional dimension. ECF No. 17-2 at 66-113; ECF No. 32 at 119-193.  The claim instead focuses on a state court's interpretation of state law, an interpretation that "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Nor can this disagreement amount to a *Bouie* violation because Beckwitt has failed to show how the judicial interpretation was "unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue." *Rogers*, 532 U.S. at 461 (citing *Bouie*, 378 U.S. at 354).  These shortcomings are fatal to Beckwitt's due process claim.  Grounds 1(b), (c), and (d) are dismissed for lack of merit.

### c.    Evidentiary Standards - Ground 1(f) and (g)

Beckwitt next attempts to recast questions of evidentiary admissibility as *Bouie* errors, again with no success. Beckwitt essentially complains that the Supreme Court of Maryland grounded its decision on improperly admitted evidence. ECF No. 17-2 at 120-124; ECF No. 32 at 204-208. Respondent rightly points out that Beckwitt's disagreement with the court's factual recitation does not amount to a *Bouie* error. ECF No. 26 at 92-113. The right to fair warning turns on either hopelessly vague recitation of the elements of an offense, or "an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face." *Bouie*, 378 U.S. at 352. Recasting evidentiary disagreements as *Bouie* errors will not suffice.

Likewise, Beckwitt's challenges to certain evidentiary rulings are not before this Court. Claimed errors in evidentiary admissibility alone do not amount to constitutional violations, and so are not cognizable under 28 U.S.C. § 2254. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 72 (1991). For these reasons, Ground 1(f) and (g) do not allege a meritorious claim for habeas corpus relief and are dismissed.

In sum, Beckwitt's expansive 350-page barrage puts forward no legally cognizable claim warranting habeas relief. *See* ECF Nos. 17-2 & 32. When according the state court decisions proper deference, this Court discerns no error. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Beckwitt's efforts simply have not convinced this Court that the Maryland Supreme Court decided his case without any *support* in prior state decisions. *Rogers*, 532 U.S. at 458 (citing *Bouie*, 378 U.S. at 356), or were otherwise an unreasonable application of law. Thus, all bases articulated in Ground One are denied and dismissed.

### 2.    Ground Two Claims

For Ground Two, Beckwitt makes a straightforward challenge to the sufficiency of the evidence to support the involuntary manslaughter conviction.[4]  This Court's review of sufficiency claims on habeas is "'sharply limited.'"  *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)).  The review is "not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review."  *Wilson*, 155 F.3d at 405–06.  Indeed, the Court must not upset the conviction if, taking the evidence most favorably to the state, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in original).  This is so because the claim is "subject to two layers of judicial deference;" the deference accorded the jury's determination on appeal and that accorded to state court decisions by the federal habeas court on collateral review.  *Id.* at 651 ("A federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (quoting *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010)).

---

[4]    Beckwitt also suggests that certain of the Maryland Supreme Court's factual recitations were unsupported by the evidence.  He argues, for example, that he never told law enforcement he had "heard an explosion" after resetting a circuit breaker.  *Compare* ECF No. 26-9 at 90-91 *with* ECF No. 17-28 at 4.  Beckwitt also argues that, contrary to the Maryland Supreme Court's recitation, Khafra did not know where Beckwitt's home was located.  *See* ECF No. 26-6 at 124; ECF No. 17-2 at 146-147; ECF No. 32 at 27.  The state court's factual determinations are presumed correct unless demonstrated otherwise by clear and convincing evidence.  28 U.S.C.A. § 2254(e)(1).  Beckwitt has failed to make such a showing.  ECF No. 26-9 at 40-46 & 90-91.  As to never having said he heard an explosion, Beckwitt submits a transcription of his recorded statement that had been played at trial.  ECF No. 17-28 at 4.  But the transcription is not certified, and the record unclear as to who ordered it or when it was prepared.  And even if Beckwitt never said he heard an explosion, that alone would not change the outcome of this Petition given the robust factual record supporting the jury verdict and the Maryland Supreme Court's affirmance.  Likewise, as to whether Khafra knew he was in Maryland, the record is consistent with the Supreme Court's recitation of that fact.  *Beckwitt*, 477 Md. at 442; *compare* ECF No. 17-3 at 39 *with* ECF No. 26-6 at 124.  Nor would that fact, even if construed as Beckwitt urges, make any difference in the analysis.

Beckwitt principally takes issue with whether the risk of an electrical fire was too remote to present a "substantial" risk of harm to Khafra.  ECF No. 17-2 at 129-131.  In support, however, Beckwitt relies on evidence not presented at trial and thus cannot be considered on collateral review.  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (a federal habeas court is "limited to the record that was before the state court that adjudicated the claim on the merits.").  More to the point, Beckwitt's argument amounts to little more than a disagreement with the verdict.  He gives the Court nothing to upset the deference owed to the jury and state court decisions.  *Beckwitt*, 477 Md. at 440. ECF No. 17-3 at 38.  Accordingly, this Court cannot conclude that, based on the record, no rational fact finder could convict Beckwitt of involuntary manslaughter.

Beckwitt next appears to cherry pick from the evidence recited by the Maryland Supreme Court and accuses the court of "'juicing up' its *mens rea* analysis." ECF No. 17-2 at 137.  Beckwitt believes that the court's description of his attempts to conceal the bunker's location from Khafra, as well as his failure to provide adequate food, water, toilet facilities to the victim, had nothing to do with Khafra's death from the fire.  *Id*.  But Beckwitt misses the point.  As the Supreme Court of Maryland explained, a rational juror could find that the totality of the circumstances demonstrated Beckwitt's "conscious[ness] of the risk" posed to Khafra in working under all conditions that Beckwitt set.  *Beckwitt*, 477 Md. at 440; ECF No. 17-3 at 37.  This Court thus defers to the Maryland Supreme Court's sound analysis.

Beckwitt last argues that the Supreme Court of Maryland's causation analysis "was entirely unsupportable on the record," but he provides no cogent rationale for this contention.  ECF No. 17-2 at 138.  Beckwitt merely rehashes the arguments his counsel made to the jury at trial.  ECF No. 26-13 at 101-02.  He hypothesizes that Khafra decided to fight the fire instead of escape because the fire extinguisher, usually kept in the laundry room, was not there, and the position of

Khafra's body as well as carbon monoxide levels in his blood were consistent with this theory. ECF No. 17-2 at 139-144.  So, says Beckwitt, Khafra did not die because he could not escape from the basement, but instead fell from a chair while attempting to retrieve the fire extinguisher.

The Court cannot, as Beckwitt intimates, reweigh the evidence and choose a counterfactual theory consistent with acquittal.  Indeed, the jury and Supreme Court of Maryland rejected the very argument Beckwitt now makes on collateral review.  ECF No. 26-13 at 101-02.  *See also Beckwitt*, 477 Md. at 452–453; ECF No. 17-3 at 52.  The evidence permitted the jury to conclude that "the combination of Beckwitt's conduct and environmental risk factors that he created in the basement produced a substantial risk of harm to Khafra—namely, that he would not be able to escape from the basement in the event of a fire or any other emergency." *Beckwitt*, 477 Md. at 440; ECF No. 17-3 at 38.  Based on the evidence, the Maryland Supreme Court rightly concluded that a rational trier of fact could convict Beckwitt of involuntary manslaughter, drawing all reasonable inferences as it did. *Beckwitt*, 477 Md. at 440–48; ECF No. 17-3 at 37-46.  Upholding the conviction on sufficiency grounds was neither contrary to, nor an unreasonable application of, federal law.  Thus, Ground Two must be denied and dismissed.

## IV.     Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability.  28 U.S.C. § 2253(c)(1).  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S.

473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." *Id.* at 338. When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Beckwitt's claims have been dismissed on substantive grounds. Upon review of the record, this Court finds that Beckwitt has not made the requisite showing. The Court thus declines to issue a Certificate of Appealability. Beckwitt may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## V.    Conclusion

For the foregoing reasons, the Petition for a writ of habeas corpus is DENIED. A separate Order follows.


   1/16/25

Date

   /S/

Paula Xinis
United States District Judge

21